*830 OPINION.
Van Fossan:
The sole question at issue in this proceeding is whether or not the alleged transfer or assignment of stock in the Geo. H. Ellis Co. by the petitioner to his sons was such a transaction as to justify the allowance of an alleged loss from the petitioner’s income for the year 1922.
We have held repeatedly that a loss must be real and actual, and not merely a fiction, in order to entitle it to deductibility. Harold B. Clark, 2 B. T. A. 555; M. I. Stewart & Co., 2 B. T. A. 737; J. R. Young, 6 B. T. A. 656; Thomas S. Hemenway, 11 B. T. A. 1311; Edward G. Budd, 12 B. T. A. 490. We must scrutinize with particular care the conditions surrounding an alleged transfer or sale of property between those who bear a confidential relationship to each other, such as members of the same family or those closely associated in business. B. P. Fouke, 2 B. T. A. 219; Edwin Schlossberg, 2 B. T. A. 683; M. I. Stewart & Co., supra; John A. McCandless, 5 B. T. A. 1120; J. R. Young, supra.
The petitioner claims that the shares of stock which he sold to his sons were the identical ones which he purchased from George H. Ellis at $200 per share in 1918. He also held a block of stock in the same company purchased in 1902 at $50 per share. To establish a loss on the sale of specific stock the cost of the stock sold must be established. As to the proof of this fundamental fact there is such -confusion in the evidence as to make it impossible for us to find as a fact that the stock here involved was that purchased in 1918 and not that purchased in 1902. This failure to establish the identity of property and consequently the cost thereof would alone necessitate a decision adverse to petitioner.
There are other considerations moving us to the same conclusion. Certain stock had been purchased in 1902 at $50 per share, when its book value was $75. Other stock was purchased in 1918 at $200 per share, when its book value was $218. There had been a steady increase in value thereafter until the book value in May, 1922, was $368 per share and in November of the same year, $410 per share. Nevertheless, a price of $150 per share was named in May, 1922, when *831 the purported sale occurred, and the same price was again named in November, when the alleged repurchase occurred. At the time of the alleged sale neither son had any money or means apart from his salary of $8,600 per year. The annual dividends had been at a rate that would have yielded each son $800 per year, or less than the usual interest charge of 6 per cent on the principal of notes. No payments were made of either interest or principal during the 6-month period. Though the stock was endorsed in blank, it never left the control of petitioner. No transfer was made on the corporate records. Petitioner was the moving spirit in both transactions. The sons were merely acquiescent. Petitioner controlled the corporation and could fix salaries, dividends, and policies. Taking the entire story into account, there arises a conviction in our minds that the purported sale in May, 1922, was not an absolute open and shut transaction of barter and sale.
Under these circumstances we are of the opinion that petitioner is not entitled to deduct the alleged loss on his income-tax return.

Decision will "be entered for the respondent.